IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA,
WEST PALM BEACH

| | |
|---|---|
| COMPREHENSIVE HEALTH CARE SYSTEMS OF THE PALM BEACHES, INC., a Florida corporation, DR. ROBERT W. MAUTHE, M.D., P.C., individually and as the representatives of a class of similarly-situated persons, | Case No. 16-cv-80967 |
| Plaintiff, | Judge Beth Bloom |
| v. | |
| M3 USA CORPORATION, and JOHN DOES 1-12 | |
| Defendants. | |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Comprehensive Health Care Systems Of The Palm Beaches, Inc. ("Comprehensive") and Dr. Robert W. Mauthe, M.D., P.C. ("Mauthe"), bring this action on behalf of themselves and all other persons similarly situated and, except for those allegations pertaining to Plaintiffs or their attorneys, which are based upon personal knowledge, allege the following upon information and belief against defendants M3 USA Corporation ("M3") and John Does 1-12 (collectively "Defendants"):

## PRELIMINARY STATEMENT

1. Defendants have sent advertisements by facsimile in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the regulations the Federal Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

2. Defendants sent Plaintiff Comprehensive at least one advertisement by facsimile and in violation of the TCPA. Exhibit A.

3. Defendants sent Plaintiff Mauthe at least 12 advertisements by facsimile and in violation of the TCPA. Exhibits B-M.

4. Plaintiffs bring this action on behalf of themselves and a class of all similarly-situated persons, and against Defendants, seeking statutory damages for each violation of the TCPA, trebling of the statutory damages, injunctive relief, compensation and attorney fees (under the conversion count), and all other relief the Court deems appropriate under the circumstances.

5. Unsolicited advertising faxes cause damage to their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. Unsolicited advertising faxes tie up the telephone lines,

prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message. Moreover, a junk fax interrupts the recipient's privacy. An unsolicited fax also wastes the recipient's valuable time that would have been spent on something else.

6. The TCPA prohibits the use of "any telephone facsimile machine, computer or other device to send, to a facsimile machine, an unsolicited advertisement…." 47 U.S.C. § 227 (b)(1)(C). The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission…." *Id.*, § 227 (a)(5) (emphasis added).

7. Defendants' fax advertises an "EARN COMPENSATION FOR YOUR OPINION!" program, a commercially available service. Exhibits A-M.

8. Other information on Defendants' faxes (Exhibits A-M) is mere pretext or subterfuge for evading the TCPA.

9. Defendants' clients are companies in the pharmaceutical industry and Defendants claim those clients "are constantly developing new ideas for improvements in the industry and looking for feedback on these ideas that come from [health professionals]." Exhibit N ("Who is using the data that I provide").

10. Defendants tell prospective survey participants, "Your opinions are very valuable [to Defendants' clients.'" Exhibit N ("Who is using the data that I provide").

11. Defendants pay health professionals to participate in "surveys" and then package the collected market research and other information for Defendants' clients.

## PARTIES, JURISDICTION, AND VENUE

12. Plaintiff Comprehensive Health Care Systems Of The Palm Beaches, Inc. is a Florida corporation with its principal place of business in West Palm Beach, Florida.

13. Plaintiff Dr. Robert W. Mauthe, M.D., P.C. is a Pennsylvania professional corporation with its principal place of business in Quakertown, Pennsylvania.

14. On information and belief, M3 is a Delaware corporation

with its principal place of business in Fort Washington, PA.

15. On information and belief, MDLinx is a division of M3 USA.

16. John Doe Defendants 1-12 are persons yet unknown to Plaintiff that actively participated in the transmission of fax advertisements to the class, or benefitted from those transmissions.

17. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

18. Personal jurisdiction exists over Defendants in Florida because Defendants have transacted business and committed tortious acts within the State.

19. Venue is proper in the Southern District of Florida, West Palm Beach because Defendants committed statutory torts within this District and a significant portion of the events took place here.

## FACTS

20. Defendants sent advertisements by facsimile to Plaintiffs and a class of similarly-situated persons. Whether Defendants did so directly or with the assistance of a third party (yet unknown to Plaintiffs), Defendants are directly liable for violating the TCPA.

21. Plaintiff Comprehensive has received at least one of

Defendants' advertisements by facsimile. A true and correct copy of the fax Plaintiff received on December 8, 2015 is attached as Exhibit A. Plaintiff intends to discover the number of other Defendants' advertisements sent to Plaintiff by fax.

22. Plaintiff Mauthe has received at least 12 of Defendants' advertisements by facsimile. A true and correct copy of the fax Plaintiff received on October 26, 2015 is attached as Exhibit B. A true and correct copy of the fax Plaintiff received on October 29, 2015 is attached as Exhibit C. A true and correct copy of the fax Plaintiff received on November 5, 2015 is attached as Exhibit D. A true and correct copy of the fax Plaintiff received on or about November 8, 2015 is attached as Exhibit E. A true and correct copy of the fax Plaintiff received on or about November 17, 2015 is attached as Exhibit F. A true and correct copy of the fax Plaintiff received on or about November 18, 2015 is attached as Exhibit G. A true and correct copy of the fax Plaintiff received on or about November 19, 2015 is attached as Exhibit H. A true and correct copy of the fax Plaintiff received on or about November 30, 2015 is attached as Exhibit I. A true and correct copy of the fax Plaintiff received on or about December 1, 2015 is attached as Exhibit J.

A true and correct copy of the fax Plaintiff received on March 29, 2016 is attached as Exhibit K. A true and correct copy of the fax Plaintiff received on April 4, 2016 is attached as Exhibit L. A true and correct copy of the fax Plaintiff received on April 5, 2016 is attached as Exhibit M. Plaintiff intends to discover the number of other Defendants' advertisements sent to Plaintiff by fax.

23. Exhibit A and Exhibit C-M are one-page documents Defendants sent by fax advertising compensation to participate in online surveys. The faxes advertise the commercial availability of Defendants' paid online survey program, through which Defendants plan to gather valuable market research and other information or opinions from health professionals for Defendants' clients.

24. Exhibit B is a one-page document Defendants sent by fax advertising compensation to participate in online surveys. The fax advertises the commercial availability of Defendants' paid online survey program, through which Defendants plan to gather valuable market research and information or opinions from health professionals for Defendants' clients.

25. Exhibit A includes the following instructions:

To participate in this survey, log on using the unique access information below:

**Survey link:** http://www.m3globalresearch.com/myinvite
**UserID:** 4409439
**Invite Code:** R9666F71

26. If one goes to the hyperlink on Defendants' fax as instructed— https://www.m3globalresearch.com/myinvite/—one sees the following "Invite Code Entry" page:

*Please enter the given survey details in the boxes below and click the submit button.*

User ID:

Invite Code:

E-mail Address:

First Name:

Last Name:

SUBMIT

Exhibit N.

27. Hyperlinks on the Invite Code Entry page for the M3 Global Research "Terms and Conditions" and "Privacy Policy" direct users to these web pages:

https://www.m3globalresearch.com/termsofservice.cfm (Exhibit O).

https://www.m3globalresearch.com/privacypolicy.cfm. (Exhibit P).

28. The "Terms and Conditions" or "Terms of Use" state as follows on Exhibit O:

> By using the Company sites, including www.mdlinx.com ("MDLinx Site"), any of its network of specialty sites ("Specialty Sites"), thesmartestoncologist.com and any M3 sites similar thereto ("Quiz Sites") and collectively with MDLinx Site and Specialty Sites the ("Sites"), you signify that you agree to abide with the following terms ("Terms of Service"). If you do not agree to these Terms of Service, you cannot use the Sites. M3 USA Corporation and our officers, directors, parent(s), employees, agents, licensees, assigns, subsidiaries and related entities ("Company"), reserve the right, at our discretion, to change, modify, add or remove portions of these Terms of Service at any time. Please review the Terms of Service periodically for changes. Changes to Terms of Service will be posted on the Sites, and posting will constitute notification of such changes. Your continued use of any of the Sites following the posting of changes to these Terms of Service will mean you agree to abide by those changes." … "However, by providing User Materials to Company, you are granting Company, its affiliated companies, business partners and licensees a worldwide, perpetual, royalty-free right to use User Materials in connection with all aspects of the operation and promotions of Company, including but not limited to, the rights to: copy, distribute, transmit (digitally or otherwise), publicly display, publicly perform, make derivative works of, reproduce, edit, translate and reformat User Materials and to publish your name in connection with User Materials.

Exhibit O.

29. The "Privacy Policy" reflected on Exhibit P contains the

following statement:

> **Market Research Studies:** From time to time, we may invite you via e-mail to participate in sponsored or unsponsored market research studies. When you agree to participate in a study, you agree to share with M3 personally identifiable information, such as your name, email address, zip code and professional information. Generally, these studies provide specific feedback using aggregated, de-identified data to third parties used to analyze trends and statistics for medical marketing, research, and development purposes, and neither your identity nor your specific feedback is shared with third parties.

Exhibit P.

30. The "Privacy Policy" reflected on Exhibit P contains the following statements:

> **Aggregate Data** We aggregate data from registered and unregistered users for use in Service funding, analysis, development and delivery. Aggregate usage information provided to third parties or used to deliver services (e.g., advertising) to third parties allows us to keep our services free to users. Aggregated information is pooled from many individual records and stripped of any data that could be used to identify an individual. Information collected in the registration process is never shared with third parties in a personally identifiable way, except, as identified in this Privacy Policy, when you elect to participate in industry-sponsored programs.

> **Marketing and Advertising** M3 may target Services, advertising, and marketing (e.g. email and website communications) based on information that you provide when you register for the Services, information that M3 receives from third party sources, and on your history of

> usage of the Services or other personal information that you provide to M3. For example, a user that registers with oncology as his/her specialty, or frequently uses oncology-related Services, or informs M3 that oncology is a significant component of his/her practice may be served oncology-related advertisements and invitations to participate in oncology-related sponsored programs, on both M3 and third party Services.

Exhibit P.

31. The Frequently Asked Questions section of Defendants' website—found at https://www.m3globalresearch.com/faq.cfm—informs as follows:

> Frequently Asked Questions
>
> The following provides answers to some of the frequently asked questions about M3 Global Research and the market research process.
>
> Who is M3 Global Research?
>
> > M3 Global Research (http://www.m3globalresearch.com) is the Market Research division and a subsidiary of M3 Inc. a public company with subsidiaries in major markets including the USA, UK, Japan, S. Korea, and China.
> >
> > MDLinx.com (http://www.mdlinx.com) is an online community of US healthcare professionals interested in staying at the forefront of medical research and news. MDLinx members, if they choose to, can opt-in to receive invitations as well as participate in breakthrough market research surveys provided by M3 Global Research.
>
> Who can join the M3 Global Research community?

> Physicians, Nurse Practitioners, Physician Assistants, Registered Nurses, Medical Students, Pharmacists, Healthcare Executives, and other healthcare professionals and individuals that are interested in the healthcare industry can all register to be a member. Also, consumers and patients that are interested in giving their opinion about goods, services, medication, etc. in the healthcare industry can join to be members of the community. The membership is FREE for all members.
>
> * * *
>
> Who is using the data that I provide?
>
> M3 Global Research's clients - major companies in pharmaceutical industry are constantly developing new ideas for improvements in the industry and looking for feedback on these ideas that come from you. Your opinions are very valuable.

Exhibit Q.

32. Exhibits F-M , like Exhibit A, include the following survey link:

**Survey link:** http://www.m3globalresearch.com/myinvite

33. Exhibits B-E include the following survey link:

**Survey link:** http://www.mdlinx.com/myinvite

34. Exhibit B is a generic invitation addressed, "Dear Doctor."

35. Exhibits C, D, and E are generic invitations to "ALL Physical Medicine and Rehabilitation specialists."

36. Exhibit F, G, H, I, and K are generic invitations to "Physical Therapists and Occupational Therapists."

37. Exhibit J is a generic invitation to "Occupational Therapists."

38. Exhibit E instructs the recipient, "If you have already completed the survey please pass it along to another Physician."

39. Exhibits A-M include M3's name, "M3 Global Research," address and contact information, the name of Jessica McCann, its VP of Global Operations, and the MDLinx logo.

40. Exhibits A-M do not include the mandatory opt-out notice required by 47 C.F.R. § 64.1200 (a) (4).

41. Plaintiffs did not expressly invite or give permission to anyone to send Exhibits A-M or any other advertisement from Defendants' to Plaintiff's fax machine.

42. On information and belief, Defendants sent advertisements by facsimile to Plaintiff and more than 39 other persons in violation of the TCPA.

43. Plaintiffs and the other class members owe no obligation to protect their fax machines from Defendants. Their fax machines are

ready to send and receive their urgent communications, or private communications about patients' medical needs, not to receive Defendants' unlawful advertisements.

## CLASS ACTION ALLEGATIONS

44. Plaintiffs bring this action as a class action on behalf of itself and all others similarly situated as members of a class, initially defined as follows:

> Each person sent one or more telephone facsimile messages from "M3 Global Research" or "MDLinx" that invited them to participate for payment or compensation in an "online survey" by logging into a "survey link" of "http://www.m3globalresearch.com/myinvite" or "http://www.mdlinx.com/myinvite" but did not state on its first page that the fax recipient may request that the sender not send any future fax and that its failure to comply with such a request within 30 days would be unlawful.

Plaintiffs expressly reserve the right to modify the proposed class definition or propose subclasses.

45. Excluded from the class are Defendants, any entity in which Defendants have a controlling interest, each of Defendants' officers, directors, legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, including his or her immediate family.

46. On information and belief, Defendants' fax advertising campaigns involved other, substantially-similar advertisements also

sent without the opt-out notice required by the TCPA. Plaintiff intends to locate those advertisements in discovery.

47. This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiffs' claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

48. <u>Numerosity/impracticality of joinder.</u> On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The precise number of class members and their identities are unknown to Plaintiffs, but will be obtained from Defendants' records or the records of third parties.

49. <u>Commonality and predominance.</u> There is a well-defined community of interest and common questions of law and fact that

predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

a. Whether Defendants sent advertisements by facsimile promoting the commercial availability or quality of property, goods, or services;

b. Whether Exhibits A-M and other yet-to-be-discovered facsimiles sent by or on behalf of Defendants advertised the commercial availability or quality of property, goods or services;

c. The manner and method Defendants used to compile or obtain the list(s) of fax numbers to which they sent the faxes contained in Exhibits A-M and other fax advertisements;

d. Whether Defendants' fax advertisements contained opt-out notices compliant with the TCPA;

e. Whether Plaintiff and the other class members should be awarded statutory damages;

f. If the Court finds that Defendant(s) willfully or

knowingly violated the TCPA, whether the Court should exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than 3 times the amount;

g. Whether the Court should enjoin Defendants from faxing advertisements in the future; and

h. Whether Defendants' conduct as alleged herein constituted conversion.

50. Typicality of claims. Plaintiffs' claims are typical of the claims of the other class members, because Plaintiffs and all class members were injured by the same wrongful practices. Plaintiffs and the members of the class received Defendants' advertisements by facsimile and those advertisements did not contain the opt-out notice required by the TCPA. Under the facts of this case, because the focus is upon Defendants' conduct, if Plaintiffs prevail on their claims, then the other putative class members will prevail as well.

51. Adequacy of representation. Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the class it seeks to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation,

and TCPA litigation in particular, and Plaintiffs intend to vigorously prosecute this action. Plaintiffs and their counsel will fairly and adequately protect the interest of members of the class.

52. <u>Prosecution of separate claims would yield inconsistent results.</u> Even though the questions of fact and law in this action are predominantly common to Plaintiffs and the putative class members, separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendants to operate under if/when class members bring additional lawsuits concerning the same unsolicited fax advertisements of if Defendants choose to advertise by fax again in the future.

53. <u>A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.</u> A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class

member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the class would be proper. Plaintiffs envision no difficulty in the management of this action as a class action.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

54. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

55. Plaintiffs bring Count I on behalf of themselves and a class of similarly situated persons against Defendants.

56. The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

57. The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

58. Exhibits A-M advertise Defendants' commercially available "Earn compensation for your opinion!" program. Exhibit A-M.

59. Defendants' website tells potential survey participants, "Your opinions are very valuable." Exhibit N (Who is using the data that I provide?)

60. "M3 Global Research's clients" are "major companies in pharmaceutical industry" that are "constantly developing new ideas for improvements in the industry and looking for feedback on these ideas that come from [health professionals]." Exhibit N (Who is using the data that I provide?)

61. Defendants sent Exhibits A-M to Plaintiffs and other health professionals offering compensation in exchange for their participation in one or more online surveys.

62. Through Exhibits A-M, Defendants intended to gather opinions and other valuable market research and information from paid participants and then provide those opinions and other valuable market research and information to Defendants' clients in the pharmaceutical industry.

63. The TCPA provides a private right of action as follows:

> 3. Private right of action. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> > (A) An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> >
> > (B) An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
> >
> > (C) Both such actions.

47 U.S.C. § 227 (b) (3).

64. The Court, in its discretion, may treble the statutory damages if it determines that a violation was knowing or willful. 47 U.S.C. § 227 (b) (3).

65. Here, Defendants violated 47 U.S.C. § 227 (b) (1) (C) by sending an advertisement by facsimile (such as Exhibit A) to Plaintiffs and the other class members without their prior express invitation or permission.

66. The TCPA requires that every advertisement sent by facsimile must include an opt-out notice clearly and conspicuously displayed on the bottom of its first page. 47 C.F.R. § 64.1200 (a) (4).

67. Defendants failed to include a clear and conspicuous opt-out notice on Exhibits A-M.

68. Exhibits A-M do not provide any of the information the TCPA requires for a compliant opt-out notice. For example, Exhibits A-M fail to state on the advertisement's first page that the recipient may make a request to the sender not to send any future advertisement by facsimile and that the sender's failure to comply within 30 days is unlawful.

69. Defendants violated the TCPA by failing to state on the first page of each fax advertisement that their failure to comply with an opt-out request within 30 days would be unlawful. Exhibits A-M.

70. Facsimile advertising imposes burdens on recipients that are distinct from the burdens imposed by other types of advertising. The required opt-out notice provides recipients the necessary information to opt-out of future fax transmissions, including a notice that the sender's failure to comply with the opt-out request will be unlawful. 47 C.F.R. § 64.1200 (a) (4).

71. Defendants' failure to include a compliant opt-out notice on their fax advertisements makes irrelevant any express consent or

established business relationship ("EBR") that otherwise might have justified Defendants' fax advertising campaigns. 47 C.F.R. § 64.1200 (a) (4).

72. The TCPA is a strict liability statute and Defendants are liable to Plaintiffs and the other class members even if their actions were negligent. 47 U.S.C. § 227 (b) (3).

73. Even if Defendants did not intend to injure Plaintiffs and the other class members, did not intend to violate their privacy, and did not intend to waste their valuable time with Defendants' advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

74. If Defendants' actions were knowing or purposeful, then the Court has the discretion to increase the statutory damages up to 3 times the amount. 47 U.S.C. § 227 (b) (3).

75. M3 is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, the faxes were sent on its behalf, or under general principles of vicarious liability, including actual authority, apparent authority and ratification.

76. Defendants knew or should have known that Plaintiff and

the other class members had not given express invitation or permission for Defendants or anybody else to fax advertisements about Defendants' goods, products, or services, that Plaintiff and the other class members did not have an established business relationship with Defendants, that Exhibits A-M are advertisements, and that Exhibits A-M did not display a compliant opt-out notices as required by the TCPA.

77. Defendants' actions damaged Plaintiffs and the other class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, the subject faxes used the fax machines of Plaintiffs and the other class members. The subject faxes cost Plaintiffs time, as Plaintiffs and their employees wasted their time receiving, reviewing and routing Defendants' illegal faxes. That time otherwise would have been spent on Plaintiffs' business activities. Defendants' faxes unlawfully interrupted Plaintiffs and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiffs and the other class members from the sending of unlawful fax advertisements occurred outside Defendants' premises.

WHEREFORE, Plaintiffs, individually and on behalf of all others

similarly situated, demand judgment in its favor and against Defendants, jointly and severally as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiffs as the representatives of the class, and appoint Plaintiffs' counsel as counsel for the class;

B. That the Court award $500.00 in statutory damages for each violation of the TCPA;

C. That, if it finds Defendant(s) willfully or knowingly violated the TCPA's faxing prohibitions, the Court exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than 3 times the amount (Plaintiffs request trebling);

D. That the Court enter an injunction prohibiting Defendants from violating the TCPA; and

E. That the Court award costs and such further relief as the Court may deem just and proper.

## COUNT II
## CONVERSION

78. Plaintiffs incorporate by reference all preceding paragraphs

as though fully set forth herein.

79. Plaintiffs brings Count II on behalf of themselves and a class of similarly situated persons and against Defendants.

80. By sending advertisements to their fax machines, Defendants improperly and unlawfully converted the class's fax machines to Defendants' own use. Where printed (as in Plaintiffs' cases), Defendants also improperly and unlawfully converted the class members' paper and toner to Defendants' own use. Defendants also converted Plaintiffs' time to Defendants' own use, as they did with the valuable time of the other class members.

81. Immediately prior to the sending of the unsolicited faxes, Plaintiffs and the other class members each owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

82. By sending them unsolicited faxes, Defendants permanently misappropriated the class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

83. Defendants knew or should have known that their

misappropriation of paper, toner, and employee time was wrongful and without authorization.

84. Plaintiffs and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiffs and each class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendants.

85. Defendants' unsolicited faxes effectively stole Plaintiffs' employees' time because persons employed by Plaintiffs were involved in receiving, routing, and reviewing Defendants' illegal faxes. Defendants knew or should have known employees' time is valuable to Plaintiffs.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendants, jointly and severally as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiffs as the representatives of the class, and appoint Plaintiffs' counsel as counsel for the class;

B. That the Court award appropriate damages;

C. That the Court award punitive damages;

D. That the Court award attorney's fees;

E. That the Court award costs of suit; and

F. That the Court award such further relief as it may deem just and proper under the circumstances.

Respectfully submitted,

COMPREHENSIVE HEALTH CARE SYSTEMS OF THE PALM BEACHES, INC., and DR. ROBERT W. MAUTHE, M.D., P.C., individually and as the representatives of a class of similarly-situated persons,

By: /s/ Phillip A. Bock

Phillip A. Bock (FL 93985)
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St,, Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500
Facsimile: 312-658-5555
service@classlawyers.com

Richard Shenkan (FL 154555)
6550 Lakeshore St.
West Bloomfield, MI 48323
(248) 562-1320
rshenkan@shenkanlaw.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that, on November 18, 2016, he caused a copy of the foregoing Second Amended Class Action Complaint and its exhibits to be filed with the Clerk using the CM/ECF system, which automatically serves a copy upon each counsel of record.

/s/ Phillip A. Bock