**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 16-cv-80967-BLOOM/Valle**

COMPREHENSIVE HEALTH CARE SYSTEMS
OF THE PALM BEACHES, INC., and
DR. ROBERT W. MAUTHE, M.D., P.C.,

      Plaintiffs,

v.

M3 USA CORPORATION, and MDLINX, INC.,

      Defendants.

_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS AND MOTION TO STAY

**THIS CAUSE** is before the Court upon Defendant M3 USA Corporation's
("Defendant") Motion to Dismiss Second Amended Class Action Complaint, ECF No. [46]
("Motion to Dismiss"). Defendant also filed a Motion to Stay Discovery, ECF No. [48]
("Motion to Stay"), pending the Court's resolution of the Motion to Dismiss. The Court has
reviewed the Motions, Plaintiffs' Response, ECF No. [52] ("Response"), Defendant's Reply,
ECF No. [54] ("Reply"), the record in this case, the applicable law, and is otherwise fully
advised in the premises. For the reasons set forth below, the Motion to Dismiss is denied.
Therefore, the Motion to Stay is denied as moot.

### I.   Background

Plaintiffs Comprehensive Healthcare Systems of the Palm Beaches, Inc.
("Comprehensive") and Dr. Robert W. Mauthe ("Mauthe") (together, "Plaintiffs") filed their
Second Amended Class Action Complaint, ECF No. [44] ("Complaint"), asserting claims for
violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and conversion
against Defendant, stemming from the transmission of faxes to Plaintiffs and a class of similarly-

situated individuals.  *See generally* Complaint.  Plaintiffs allege that Defendant is a Delaware corporation, of which MDLinx is a division.[1]  *Id.* ¶¶ 14-15.  Defendant's clients are companies in the pharmaceutical industry looking for feedback or ideas from health professionals on how to improve the industry.  *Id.* ¶ 9.  As a result, Defendant sends advertisements by fax to Plaintiffs and others in which Defendant offers compensation for participation in online surveys and advertises the commercial availability of Defendant's online paid survey program, through which Defendant gathers market research and opinions from health professionals for its clients.  *Id.* ¶¶ 20-24.  Plaintiffs further allege that they did not invite or consent to being sent advertisements from Defendant on their fax machines.  *Id.* ¶ 41.  Therefore, Plaintiffs contend that Defendant violated the TCPA by sending unsolicited advertisements without prior express invitation or permission and without a clear and conspicuously displayed opt-out notice.  *Id.* Count I. Plaintiffs also assert a claim for conversion based upon Defendant's use of their faxes.  *Id.* Count II.  Plaintiffs attach to the Complaint a number of exhibits exemplifying the type and content of the faxes received by Plaintiffs, ECF Nos. [44-1]-[44-13], and content from Defendant's website, ECF No. [44-14]-[44-16].  Defendant seeks to dismiss the Complaint pursuant to Rule 12(b)(6) of the Rules of Federal Procedure for failure to state a claim.

## II.  Legal Standard

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining

---

[1] Defendant asserts that MDLinx, Inc. was merged into M3 Corporation in 2008 and no longer exists as a separate entity.  *See* ECF No. [15] at 7 n.3.

that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).  "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009).  However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).  Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer."  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).  A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is

undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).  Through this lens, the Court evaluates the instant Motion to Dismiss.

### III. Discussion

The sole basis for dismissal raised by Defendant is that the faxes sent to Plaintiffs are not advertisements within the definition provided by the TCPA.  Defendant argues that the faxes are merely invitations to participate in "double blind medical surveys," and that they do not advertise property, goods, or service for sale, as required by the TCPA.  Defendant further argues that Plaintiffs' reliance on the hypothetical result of following the survey link provided in the fax and resulting registration for a survey, and review of Defendant's Terms of Use, Privacy Policy, and FAQs, is misplaced as it does not somehow convert the faxes into advertisements, and only leads to the ultimate conclusion that Defendant is a for-profit company.  Defendant further argues that because Plaintiffs fail to state a claim under federal law, the Court should decline to exercise supplemental jurisdiction over the state law conversion claim.  The Court considers each argument in turn.

Relevant in this case is the TCPA's prohibition on the sending of unsolicited advertisements to fax machines.  47 U.S.C. § 227(b)(1)(C).  The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."  47 U.S.C. § 227(a)(5).  The TCPA tasks the Federal Communications Commission ("FCC") with developing regulations with which to implement it provisions.  *See* 47 U.S.C. § 227(b)(2) ("The Commission shall prescribe regulations to implement the requirements of this subsection.").  The FCC provides additional guidance with respect to what qualifies as an unsolicited advertisement under the TCPA and

examples of the types of faxes which would violate the statute.  *See Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991; Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25967-01 (May 3, 2006).  Furthermore, "the [FCC] concludes that any surveys that serve as a pretext to an advertisement are subject to the TCPA's facsimile advertising rules.  The TCPA's definition of 'unsolicited advertisement' applies to any communication that advertises the commercial availability or quality of property, goods or services, even if the message purports to be conducting a survey."  *Id*.  Thus, the FCC contemplates that savvy companies may devise a multilayered approach in attempting to avoid violating the TCPA, and acknowledges that an otherwise benign fax may violate the TCPA, if it ultimately leads to the promotion of goods or services.  *See Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, 106 F. Supp. 3d 9, 13 (D.D.C.2015) ("The regulations thus provide that a fax that does not on its face promote a product or service may nonetheless violate the TCPA if it is a precursor to a future solicitation.").

In pertinent part, the Complaint alleges that through the online survey program, Defendant gathers information and opinions from health professionals, which it then shares with its clients, who are companies in the pharmaceutical industry.  Compl. ¶¶ 9, 23.  The faxes at issue direct a potential participant to a survey weblink, which in turn directs the potential participant to the website's "Privacy Policy," stating that Defendant may target advertising and marketing based upon information provided by a potential participant during the registration process.  *Id*. ¶¶ 25-30.  "For example, a user that registers with oncology as his/her specialty, or frequently uses oncology-related Services, or informs M3 that oncology is a significant component of his/her practice may be served oncology-related advertisements and invitations to participate in oncology-related sponsored programs, on both M3 and third party Services."  *Id*. ¶

30; *see also* ECF No. [44-16].  Moreover, Defendant's "Terms of Use" specify that by using the company's sites and providing "User Materials," the user grants Defendant and others the right "to use User Materials in connection with all aspects of the operation and promotions of Company."  *Id.* ¶ 28; *see also* ECF No. [44-15].  In the face of these allegations, the ultimate question of whether Defendant's survey fax is merely a pretext for advertising its goods or services is a question of fact not suitable for disposition as a matter of law upon a motion to dismiss.  *See Eden Day Spa, Inc. v. Loskove*, No. 14-81340-CIV, 2015 WL 1649967, at *3 (S.D. Fla. Apr. 14, 2015) (denying motion to dismiss, where fax could be construed as an advertisement as part of an overall marketing campaign); *see also Neurocare Inst. of Cent. Fla., P.A. v. Healthtap, Inc.*, 8 F. Supp. 3d 1362, 1367 (M.D. Fla. 2014) (denying motion to dismiss, where complaint alleged that a fax promotes services or opportunities available through a company's website).  The cases cited by Defendant in the Motion to Dismiss do not persuade the Court otherwise with respect to Count I.

As a result, Defendant's principal argument for dismissal of the conversion claim in Count II fails.  However, Defendant argues in the alternative that if the Court declines to dismiss the TCPA claim, Count II should also be dismissed because the receipt of a fax is not sufficient to give rise to a claim for conversion.  Defendant relies in part upon *Neurocare*, in which the court dismissed a similar conversion claim because the alleged interference—i.e. conversion of fax, toner, paper, and employee time—was not sufficiently "serious, major, or important."  8 F. Supp. 3d at 1368.  Since then, however, the Eleventh Circuit has held otherwise, determining that the dismissal of a conversion claim was incorrect where the complaint alleged the receipt of a single one-page fax.  *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1258-59 (11th Cir. 2015).  "Under Florida law, a conversion consists of an act in

derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion." *Id*. at 1258 (internal citation and quotations omitted). There is no requirement that the property have a particular monetary value to be converted. *Id.* at 1259. In fact, the opposite is true. "Although the value of the property converted may be significant in determining the amount of damages to be awarded, it appears wholly irrelevant in assessing the legitimacy of the initial cause of action." *Id*. (citing *Warshall v. Price*, 629 So. 2d 903, 904 n.3 (4th DCA 1993)). Therefore, Defendant's alternative argument for dismissal of Count II also fails.

### IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss, **ECF No. [46]**, is **DENIED**. As a result, the Court need not separately consider the Motion to Stay, **ECF No. [48]**, which is **DENIED AS MOOT**. Defendant shall file an answer to the Second Amended Complaint, ECF No. [44], **no later than January 20, 2017**.

**DONE AND ORDERED** in Miami, Florida, this 10th day of January, 2017.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record